IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO. 2:23CR186-MHT-KFP |
| v. | ) | [18 U.S.C. §1349; |
| | ) | 18 U.S.C. §1708; |
| KELDRIC ORTEZ JONES, | ) | 18 U.S.C. §1344(2)] |
| SAILOU GUEYE, and | ) | |
| YVETTE TEMPLE | ) | |
| | ) | INDICTMENT |

The Grand Jury charges:

## BACKGROUND

1. All allegations are incorporated herein as to each individual count.

2. At all times relevant to this indictment, Defendants KELDRIC ORTEZ JONES, SAILOU GUEYE, and YVETTE TEMPLE were residents of Montgomery County, Alabama.

3. From in or about August 2022 through the present, numerous mail thefts have occurred in Montgomery County, Alabama. Many of the mail thefts involving checks resulted in the cashing of fake or fraudulent checks purporting to be from the accounts of the stolen checks. Of these items, many were stolen by one or more postal employees.

## COUNT 1
(Conspiracy to Commit Bank Fraud)

4. From on or about July 16, 2022, through on or about October 6, 2022, in Montgomery County, in the Middle District of Alabama, and elsewhere, the defendants,

KELDRIC ORTEZ JONES,
SAILOU GUEYE, and
YVETTE TEMPLE

and others, knowingly and willfully conspired, combined, and agreed with each other and others, known and unknown, to execute and attempt to execute a scheme or artifice to obtain any of the

1

moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Section 1344. The conspiracy is described as follows:

### Manner and Means

5. This scheme occurred by the collaboration of numerous people, each filling different roles in the conspiracy. Postal employees and others stole checks, or the information contained on checks from the mail. Scheme organizers obtained these checks, or the information contained on the checks and used it to create fake or counterfeit checks. The counterfeit checks were often in the same amount and with the same date as the stolen checks to avoid immediate detection by the victims. Recruiters recruited account holders to use their bank accounts to deposit counterfeit or stolen checks and withdraw funds. Account holders deposited the counterfeit checks into their accounts, retained part of the proceeds, and forwarded the remainder to organizers of the conspiracy.

6. It was part of the conspiracy that JONES obtained stolen mail, including checks. On or about October 3, 2022, JONES was in the possession of 39 checks stolen from the United States mail. These checks were drawn on the accounts of Jack Ingram Motors, Inc.; W.P.C., Inc.; O.S., Inc.; N.I., Inc.; A.S.; N & B, Inc.; A.B.C.; T.M.G., Inc.; T. & T. E.; T.B.E.; M.L.F.; A.C.D.; E.M.H.H.; G.T.G. and W.H.G.; M.J.G. and G.T.G.; Y.Y., Inc.; M.D.; C.E.M. and T.T.M.; J.A.P., II; M.G.M.; W.W.; R.O.III. and A.S.O.; C.B.M.; W.B.B.; B.W. or J.E.S.; L. or C.R.H.; C.S.S.Jr. and B.H.S.; and J.S. JONES was also in possession of laptops and a printer capable of creating counterfeit checks. TEMPLE was present when law enforcement obtained the checks, laptops and

printer. Fingerprints of JONES, GUEYES, Q.E., J.G. (a Montgomery mailman), and others were present on the stolen checks.

7.  JONES and TEMPLE are related to a second mailman whose fingerprint was not recovered from the stolen checks. When law enforcement discovered the above-referenced stolen mail, TEMPLE communicated with this mailman, her brother, via cell phone.

8.  JONES and GUEYE recruited and solicited Q.E. to participate in the conspiracy by recruiting bank account holders to cash counterfeit checks. The counterfeit checks were created from stolen mail.

9.  On or about August 6, 2022, TEMPLE deposited two counterfeit checks into her own bank account. The account number, amounts and dates matched two checks that had been stolen from the mail. JONES withdrew funds from this account using TEMPLE's ATM card.

10.  TEMPLE recruited V.C. to cash a counterfeit check into her account as part of the conspiracy. On or about September 28, 2022, TEMPLE deposited a counterfeit check into V.C.'s account. Two days later, V.C. withdrew part of the funds and gave part of the proceeds to TEMPLE. The counterfeit check was on the account of Jack Ingram Motors, Inc.

11.  Numerous other account holders and individuals participated in this scheme along with the named codefendants and others.

12.  All in violation of Title 18, United States Code, Section 1349.

COUNT 2
(Possession of Stolen Mail)

13.  On or about October 3, 2022, in the Middle District of Alabama, the defendant,

KELDRIC ORTEZ JONES,

unlawfully had in his possession any letter, mail, and any article or thing contained therein, which had been stolen, taken, embezzled and abstracted from the mail, knowing the said articles to have

been stolen, taken, embezzled and abstracted from the mail to wit: checks, in violation of Title 18, United States Code, Section 1708.

## COUNTS 3-5
## (Bank Fraud)

14. From on or about July 16, 2022, through on or about October 6, 2022, in Montgomery County, Alabama, within the Middle District of Alabama, and elsewhere, the defendants,

### KELDRIC ORTEZ JONES and
### YVETTE TEMPLE,

knowingly executed and attempted to execute a scheme and artifice to obtain, by means of materially false and fraudulent pretenses, representations, and promises, moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of the financial institutions. The scheme and artifice to defraud is set forth below:

### MANNER AND MEANS

15. On or about July 29, 2022, a cashier's check numbered 1091436 drawn on MAX Credit Union was stolen from the United States Postal Service. On that same date, a second cashier's check numbered 1091437, also drawn on MAX Credit Union, was also stolen from the United States Postal Service. The account information was taken from these checks and used to create fraudulent counterfeit checks in the same amount from the same account, but to a different payee, TEMPLE. On or about August 2, 2022, TEMPLE deposited these checks into her account at two separate branches of the Bank of America. Shortly thereafter, JONES withdrew funds from that account.

16. On or about September 20, 2022, a check written on the account of Jack Ingram Motors was stolen from the United States Postal Service. The account information was taken from

this check and used to create a fraudulent counterfeit check in the same amount from the same account, but to a different payee. The check was deposited into an unindicted co-conspirator's account at Navy Federal Credit Union by TEMPLE. These funds were withdrawn by the unindicted co-conspirator, V.C.

## THE CHARGES

17. On or about the dates set forth below, for the purpose of executing and attempting to execute the scheme set forth above, the named defendant deposited or caused to be deposited to following checks, with each check continuing a separate count against the defendants named therein:

| Count | Check Number | Deposit Date | Defendants | Bank |
|---|---|---|---|---|
| 3 | 1091436 | 8/2/2022 | TEMPLE & JONES | Bank of America |
| 4 | 1091437 | 8/2/2022 | TEMPLE & JONES | Bank of America |
| 5 | 108042 | 9/28/2022 | TEMPLE | Navy Federal Credit Union |

All in violation of Title 18, United States Code, Section 1344(2).

## FORFEITURE ALLEGATION-1

A.   The allegations contained in Counts 1, 3, 4, and 5 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2).

B.      Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1349 and 1344 set forth in Counts 1, 3, 4, and 5 of this Indictment, the defendants,

KELDRIC ORTEZ JONES,
SAILOU GUEYE, and
YVETTE TEMPLE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly, as a result of such violation. The property includes but is not limited to a forfeiture money judgment.

C.      If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(2).

FORFEITURE ALLEGATION-2

A.      The allegations contained in Count 2 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 18, United States Code, Section 2461.

B.      Upon conviction of the offenses in violation of Title 18, United States Code,

Section 1708 set forth in Count 2 of this Indictment, the defendant,

KELDRIC ORTEZ JONES,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 18, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly, as a result of such violation. The property includes but is not limited to a forfeiture money judgment.

    C.    If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant:

    (1)    cannot be located upon the exercise of due diligence;

    (2)    has been transferred or sold to, or deposited with, a third party;

    (3)    has been placed beyond the jurisdiction of the court;

    (4)    has been substantially diminished in value; or

    (5)    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 18, United States Code, Section 2461.

7

A TRUE BILL:

_____
Foreperson

SANDRA J. STEWART
UNITED STATES ATTORNEY

_____
J. Patrick Lamb
Assistant United States Attorney

_____
Russell T. Duraski
Assistant United States Attorney